UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DINO CORTINA,<br><br>    Plaintiff,<br><br>v.<br><br>BRISTOL-MYERS SQUIBB COMPANY, et al.,<br><br>    Defendants. | Case No. 17-cv-00247-JST<br><br>**ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, DENYING REQUEST FOR JURISDICTIONAL DISCOVERY, AND GRANTING MOTION TO TRANSFER**<br><br>Re: ECF No. 13 |

Before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or in the Alternative, to Transfer under 28 U.S.C. § 1404(a). ECF No. 13. Plaintiff opposes the motion. ECF No. 27. The Court denies the motion to dismiss for lack of jurisdiction and grants the motion to transfer the case to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a).

**I.  BACKGROUND**

On January 18, 2017, Plaintiff Dino Cortina filed a complaint against AstraZeneca Pharmaceuticals LP ("AstraZeneca"), Bristol-Myers Squibb Company ("Bristol-Myers"), and McKesson Corporation ("McKesson"). Cortina is a citizen and resident of New York. ECF No. 1 ¶ 7. Bristol-Myers is a Delaware corporation with its principal place of business in New York. Id. ¶ 9; ECF No. 13 at 11, n.5. AstraZeneca is a Delaware limited partnership with its principal place of business in Delaware. ECF No. 1 ¶ 10. McKesson is a Delaware corporation with its principal place of business in California. Id. ¶ 11. The complaint alleges that Saxagliptin, a prescription drug under the brands Onglyza and Kombiglyze XR, causes heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious conditions to users who suffer from Type 2 diabetes, due to their increased cardiovascular risk. ECF No. 1. Plaintiff alleges that

1  Defendants were involved with aspects of bringing Saxagliptin to market, including, but not
2  limited to, the manufacturing, marketing, and distribution of the prescription drug. Id. ¶¶ 27-28,
3  33-35. In addition, Plaintiff claims that Defendants refused to warn, failed to warn, or "under-
4  warned" about Saxagliptin's risks, and engaged in "inadequate clinical trials, testing and study,
5  and inadequate reporting regarding the results of the clinical trials, testing and study." Id. ¶ 56.

On April 24, 2017, Defendants filed the instant motion, arguing that the Court lacks personal jurisdiction over Plaintiff's claims with regard to AstraZeneca and Bristol-Myers because they are out-of-state defendants and Plaintiff's claims do not arise from Defendants' conduct within California. ECF No. 13 at 9-10. In the alternative, Bristol-Myers, AstraZeneca, and McKesson move to transfer the case to the United States District Court for the Eastern District of New York because the Plaintiff resides in New York and does not allege any connection to California. Id. at 10.

## II. LEGAL STANDARD

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008). Absent an evidentiary hearing, the plaintiff need only make a "prima facie showing" of personal jurisdiction. Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)). "Uncontroverted allegations in the plaintiff's complaint must be taken as true." Id. Where there are "[c]onflicts between the parties over statements contained in affidavits," they "must be resolved in the plaintiff's favor." Id. (internal quotation marks omitted) (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004)).

Before a court can exercise personal jurisdiction over a nonresident defendant, the laws of the forum state must provide a basis for exercising personal jurisdiction, and the assertion of personal jurisdiction must comport with due process. CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1073-74 (9th Cir. 2011). Because "California's long-arm statute is co-extensive with federal standards, . . . a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process." Id. (citing Panavision Int'l L.P. v. Toppen, 141 F.3d 1316, 1320 (9th Cir. 1998)).

2

There are two types of personal jurisdiction: "general or all-purpose" and "specific or case-linked." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn.8-9 (1984)). When a defendant's affiliations with the forum state are so "continuous and systematic" as to render the defendant "at home" in the state, a court may assert general jurisdiction to "hear any and all claims" against that defendant. Id.

"Specific jurisdiction, on the other hand, depends on an affiliatio[n] between the forum and the underlying controversy, principal, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear, 564 U.S. at 919 (internal quotation marks omitted). In contrast to general jurisdiction, specific jurisdiction is also "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Id. (internal quotation marks omitted). In other words, specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 134 S.Ct. 1115, 1121 (2014). The Ninth Circuit has established a "three-prong test for analyzing a claim of specific personal jurisdiction":

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802 (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of satisfying the first two prongs of the test." Id. (citing Sher, 911 F.2d at 1361). If the plaintiff succeeds in doing so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

**III. DISCUSSION**

    **A. Personal Jurisdiction**

The dispute before the Court is whether it has specific jurisdiction over Bristol-Myers and

AstraZeneca.[1] The first prong of the Ninth Circuit test is not at issue, because Defendants concede that they have availed themselves of the forum's benefits. Turning to the second prong, Bristol-Myers and AstraZeneca argue that Plaintiff does not "meet the Ninth Circuit's 'arising from' standard because he has not alleged and cannot demonstrate that [their] activities . . . in California caused his alleged injury in New York." ECF No. 13 at 15.

A plaintiff's "residency in the forum state is not the *sine qua non* of specific jurisdiction." Guillette v. PD-RX Pharmaceuticals Inc., No. 5:15-cv-00564-R, 2016 WL 3094073, at *4 (W.D. Okla. June 1, 2016) (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 776 (1984)). Neither is where the Plaintiff experienced his injury. Rather, the Supreme Court has instructed that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Walden, 134 S.Ct. at 1125.

In Walden, the Supreme Court emphasized that "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." Id. at 1126. Moreover, the effect of the defendant's conduct must be "tethered to" the state, not to the plaintiff. Id. at 1125. In this circuit, courts apply a "but for" test to determine whether a claim arises out of the defendant's forum-related activities. Doe v. Unocal Corp., 248 F.3d 915, 924 (9th Cir. 2001). The question is, but for Bristol-Myers's and AstraZeneca's conduct in California, would Cortina's injury have occurred? LiveCareer Ltd. v. Su Jia Techs. Litd., No. 14-CV-03336-JST, 2015 WL 1448505 at *5 (N.D. Cal. Mar. 31, 2015). The Court concludes Cortina's injuries would not have occurred but for Bristol-Myers's and AstraZeneca's contacts with California because the Saxagliptin clinical trials conducted here were part of the unbroken chain of events leading to Plaintiff's alleged injury.

Defendants argue against this result on several grounds. First, they argue that Plaintiff's claims sound in failure to warn and fraudulent concealment, not in any harm she suffered as a result of any clinical trial. That argument ignores, however, Plaintiff's allegations that Defendants engaged in "inadequate clinical trials, testing and study, and inadequate reporting regarding the

---

[1] Plaintiff does not contend that the Court has general jurisdiction over these defendants.

4

results of the clinical trials, testing and study." ECF No. 1 at 11. The related state court case on which Plaintiff relies also notes that "Saxagliptin was developed (at least in part) in California." ECF No. 27-1 at 10. Surely, if the drug at issue had never been developed, tested, or approved, Plaintiff would not have been harmed by it.

Defendants also note that the same public records Plaintiff cites reveal that clinical trials for the drug at issue occurred in many forums. ECF No. 30 at 2, 5. "Under the [but-for] approach, [however,] any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction." Newsome v. Gallacher, 722 F.3d 1257, 1269 (10th Cir. 2013) (quoting Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1078 (10th Cir. 2008)). Analogously, the Ninth Circuit has held in the context of constitutional standing that "a causal chain does not fail simply because it has several 'links,' provided those links are 'not hypothetical or tenuous' and remain 'plausib[le].'" Maya v. Centex Corp., 658 F.3d 1060, 1070 (9th Cir. 2011) (quoting Nat'l Audubon Soc., Inc. v. Davis, 307 F.3d 835, 849 (9th Cir. 2002)).

A similar case concerning the prescription drug Paxil, M.M. ex rel. Meyers v. GlaxoSmithKline LLC, 61 N.E.3d 1026, 1031 (Ill. Ct. App. 2016), is instructive. There, plaintiffs alleged "(1) strict liability and failure to warn, (2) strict products liability and design defect, (3) negligence, (4) breach of implied warranty, (5) breach of express warranty, and (6) negligent misrepresentation and concealment." Id. Defendant GSK moved to dismiss the out-of-state plaintiffs' claims in part due to a lack of specific personal jurisdiction, claiming that "its actions or omissions in Illinois were not the 'but for' cause of the alleged harm: plaintiffs did not serve as study subjects in Illinois, did not receive Paxil prescriptions in Illinois, did not ingest Paxil in Illinois, and did not suffer injury from Paxil in Illinois." Id. at 1032. "GSK conducted 18 preclinical and clinical studies on Paxil in Illinois," but GSK "argued that plaintiffs' claims did not arise out of defendant GSK's contacts in Illinois, specifically, because Paxil clinical trials took place in 44 states and abroad." Id. at 1032-33. As in this case, the clinical trials conducted in the forum state constituted only a "small fraction" of the overall clinical trials "in the multicenter [drug] study." Id. at 1038, 1040. There, as here, "[n]either defense counsel nor plaintiffs' counsel

were able to suggest a bright-line test for the number of [forum state] trials that would give rise to personal jurisdiction" in the forum state. Id. at 1033. The M.M. court found that plaintiffs had "made a *prima facie* showing that their claims directly arose from or related to . . . acts of omission during the clinical trials and the resulting inadequate warning labels," and that it was inconsequential that only a sliver of those trials occurred in the forum state. Id. at 1037, 1041-42.[2] Similarly, in In re Syngenta Mass Tort Actions, No. 3:16-cv-00255-DRH, 2017 WL 2117728 (S.D. Ill. May 15, 2017), the defendants argued "that their contacts with Illinois [were] not part of the causal chain leading to the plaintiffs' alleged injuries," and that therefore personal jurisdiction was lacking. Id. at 4. Plaintiffs in that case sought "to hold Syngenta liable for their losses resulting from the reduced price for their corn caused by Syngenta's release of [genetically modified] products into the marketplace." Id. at *1. They argued that "Syngenta conducted numerous field tests in Illinois, which aided in the eventual commercialization of VIPTERA™, which is the stated underlying basis for all plaintiffs' claims." Id. at *4. The court rejected Defendants' "assert[ion] that the field tests have nothing to do with plaintiffs' current allegations, id. at *4, holding that plaintiffs did "not have to prove that [the defendant] did all their business activities regarding commercialization and marketing of [the genetically modified corn] seeds in Illinois only," but only that "those contacts [were] meaningful." Id. at *5. The court found that plaintiffs had established specific personal jurisdiction. Id. at *6.

Defendants contend that application of the "but for" test in multi-center clinical trials in multiple jurisdictions might have the effect of creating specific jurisdiction in courts in numerous states. So it might – but only because important economic and scientific activity connected to an alleged harm occurred in each of those locations. Moreover, it is not clear what the alternative would be. Presumably, Defendants would agree that if 100 percent of clinical trials were

---

[2] The M.M. court noted the Illinois Supreme Court's observation that: "'Although the United States Supreme Court has not clarified what is meant by 'arising out of' or 'related to' in the context of a jurisdiction question [], several courts have determined that the applicable standard is lenient or flexible.'" Id. at 1037 (quoting Russell v. SNFA, 2013 IL 113909, 987 N.E.2d 778, 797, 370 Ill. Dec. 12 (2013)). The Ninth Circuit has likewise noted that it "has, in light of . . . Supreme Court precedent, adopted a more 'flexible approach.'" Ochoa v. J.B. Martin and Sons Farms, Inc., 287 F.3d 1182, 1188 n.2 (9th Cir. 2002) (quoting Brand v. Menlove Dodge, 796 F.2d 1070, 1074 (9th Cir. 1986)).

6

conducted in a given jurisdiction, the "but for" test would be satisfied. If that is correct, then abandonment of the "but for" test means the adoption of a threshold level of activity below 100 percent. What would that threshold be? If 25 percent of the clinical trials were conducted in California, would that be enough? 50 percent? 75 percent? The point is that our existing case law provides no basis for imposing an arbitrary cut-off, and the Court is disinclined to fashion a new barrier to the exercise of its jurisdiction from whole cloth.[3] As the Ninth Circuit's "but for" test and the persuasive analysis in M.M. and Syngenta all make clear, the relevant inquiry is whether the plaintiff's choice of forum is a *proper* place for personal jurisdiction, not whether it is the best one. See M.M., 61 N.E.3d at 1041 (agreeing with plaintiffs' contention that "in the context of specific personal jurisdiction, whether the Illinois contacts are meaningful depends entirely on their relation to the Plaintiffs' causes of action, and not at all on a percentage-based comparison between how much related conduct occurred outside of Illinois").

Lastly, the Court notes that the United States Supreme Court recently held in Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., that the fact that a defendant had research and laboratory facilities, sales representatives, and sales and marketing operations in a forum state was insufficient to justify the exercise of specific jurisdiction in the absence of an "adequate link between the State and the nonresidents' claims." ___ S.Ct. ___, 2017 WL 2621322, at *8 (2017). The present case is distinguishable from Bristol-Myers. There, "BMS [Bristol-Myers Squibb] did not develop Plavix in California, did not create a marketing strategy for Plavix in California, and did not manufacture, label, package, or work on the regulatory approval of the product in California," meaning that its activities in California were not sufficiently linked to the out-of-state plaintiffs' claims. 2017 WL 2621322, at *4. In this case, Plaintiff alleges that "nearly every pivotal clinical trial necessary for NDA approval involved studying of the Saxagliptin drugs throughout the State of California," and that "but for the pre-NDA development of the Saxagliptin drugs within the State of California, the drugs would not have been sold and marketed throughout the U.S. nor ingested by Plaintiff." ECF No. 27 at 5.

---

[3] The Court does not mean to suggest that even a *de minimis* level of clinical trial activity would satisfy the requirements of specific jurisdiction. That question is not presented here.

7

This linkage between Defendants' in-state clinical trial activity and Plaintiff's injury is sufficient to satisfy the Ninth Circuit's "but for" test.

The Court concludes that Plaintiff has established a *prima facie* case that Defendants' clinical trials in California were part of the "but for" cause of his injuries sufficient to confer jurisdiction.[4]

**B.     Transfer**

In the alternative, Defendants request that this case be transferred to the Eastern District of New York. ECF No. 13 at 18. Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Id. The purpose of section 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 276 U.S. 612, 616 (1964) (internal quotation marks omitted).

The Ninth Circuit requires that courts consider a variety of factors in determining whether to transfer an action. See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000); Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). The relevant factors are: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. Barnes & Noble v. LSI Corp., 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011).

The district court has the broad discretion "to adjudicate motions to transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen, 376 U.S. at 622). It is not enough for the defendant to merely show that it prefers another forum, and transfer will also not be allowed if

---

[4] In light of this conclusion, the Court denies Plaintiff's request for jurisdictional discovery as moot.

8

the result is merely to shift the inconvenience from one party to another. Van Dusen, 376 U.S. at 645-46.

"The convenience of the witnesses, particularly non-party witnesses, is often the most important factor." Grossman v. Johnson & Johnson, Case No. 14-cv-03557-VC, 2015 WL 1743116, at *1 (N.D. Cal. April 13, 2015). "The Court must also consider the relative importance of the witnesses." Id. (citing Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1335-36 (9th Cir. 1984)). "[A]lthough a plaintiff[']s choice of forum is generally accorded significant weight, this weight is substantially lessened where the plaintiff does not reside in the forum and the acts that gave rise to the case did not occur in that forum." Id. (citing Pac. Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968)).

Plaintiff is a resident of New York. Although the Court has found that there is a sufficient connection between the acts that gave rise to the case and the California forum for purposes of specific jurisdiction, it remains the case that the overwhelming majority of events directly related to Plaintiff's injuries took place in New York. Defendants argue that transfer is in the best interests of the parties and witnesses because Plaintiff's Onglyza was prescribed, purchased, and ingested in New York. ECF No. 13 at 19. Plaintiff's doctors and all documents related to his medical, pharmacy, insurance, and employment records are located in New York. Key witnesses such as his prescribing physician, treating doctors, employer, and other corroborating witnesses are all located outside California and are outside the subpoena power of this Court. Defendant Bristol-Myers's principal place of business is in New York.

Plaintiff argues that because "[e]xtensive development and testing of Saxagliptin occurred in California, . . . the bulk of the evidence relating to the core issues in this case are likely to be located in California." ECF No. 27 at 17. While the fact that *some* testing was performed in California is sufficient to create specific jurisdiction here, Plaintiff's "bulk of the evidence" statement simply cannot be correct based on the record. Plaintiff does not have an independent connection to the Northern District of California, and AstraZeneca and Bristol Myers's relevant company documents and witnesses are not located in California. Id.

9

The only witness that the Court is sure exists in California with regard to Plaintiff's case is McKesson, and the only documents located in California are those pertaining to McKesson. Clearly, the Northern District of California is a convenient forum for McKesson. However, that convenience is outweighed by the inconvenience to the many third-party witnesses discussed above. Particularly given the Plaintiff's lack of contacts with his chosen forum, the Court concludes that the remaining factors do not adequately counterbalance the above factors weighing in favor of transfer.[5]

## CONCLUSION

Bristol-Myers and AstraZeneca's motion to dismiss for lack of personal jurisdiction is denied, Cortina's request for jurisdictional discovery is denied as moot, and Defendants' motion to transfer is granted.

IT IS SO ORDERED.

Dated: June 27, 2017

_____
JON S. TIGAR
United States District Judge

---

[5] As in Grossman, Plaintiff also argues that transfer is inappropriate due to several related actions pending before the Court. "The existence of a related action can be an important consideration 'because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties.'" Grossman, 2015 WL 1743116, at *1, n.1 (quoting A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal., 503 F.2d 384, 389 (9th Cir. 1974)). The pending related actions in this case do not persuade the Court that transfer is improper, for the same reasons outlined in Grossman:

> Here, however, while litigating all the related cases in the Northern District of California might be more convenient for the defendants, there do not appear to be any corresponding benefits in terms of convenience of the plaintiff or any non-party witnesses. And by moving for transfer, the defendants have demonstrated that they are willing to forgo any such benefit. Consequently, the Court is not persuaded that the pendency of related cases in this district outweighs the factors that strongly favor transfer. Of course, if the plaintiff believes that coordinated or consolidated pretrial proceedings are necessary to avoid duplicative discovery or otherwise conserve the parties' resources, the plaintiff is free to file a motion for centralization with the Joint Panel on Multidistrict Litigation.

Id., 2015 WL 1743116, at *1, n.1.